IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOMMY ROBINSON, #226-992                *

    Plaintiff,                                    *

        v.                                        *       Civil Action No. DKC-18-295

KIMBERLY MARTIN, Registered Nurse       *
WARDEN RICHARD GRAHAM, JR.,
ASSISTANT WARDEN RONALD S.[1]           *
  WEBER,
CHIEF OF SECURITY BRADLEY O.            *
  BUTLER,
CAPT. WILLIAM F. MORGAN,                *
CAPT. MARC V. WHITESIDE,
SGT. JOHN R. SHAVER,                    *
ALL NAMED MEDICAL STAFF,
JANETTE CLARK, Nurse Practitioner,[2]   *
ALL UNKNOWN NAMED DOC OFFICERS,
                                        *
    Defendants.

*********

**MEMORANDUM OPINION**

## I.    Procedural History

Self-represented Plaintiff Tommy Robinson, an inmate currently confined at Western Correctional Institution ("WCI"), asserts civil rights violations under 42 U.S.C. § 1983 by Nurse Practitioner Janette Clark, a prison health care provider employed by Wexford Health Sources, Inc. ("Wexford")[3] and WCI Correctional Defendants, including Warden Richard Graham, Jr.,

---

[1]   The Clerk shall amend the docket to reflect the full spelling of the Correctional Defendants' names, as noted above.

[2]   The Clerk shall amend the docket to reflect Defendant Janette Clark's proper name and title, as noted above.

[3]   Medical Defendant Kimberly Martin was voluntarily dismissed by Mr. Robinson. ECF No. 33; ECF No. 46 at 5. Wexford is not a named defendant in this action.

former Assistant Warden Ronald S. Weber, Chief of Security Bradley O. Butler, Captain Marc V. Whiteside, Captain William F. Gordon, and Sergeant John R. Shaver. ECF No. 1; ECF No. 7.[4]

By Order dated May 30, 2018, this case was opened after Mr. Robinson filed papers in a separate closed case, *Robinson v. Martin, et al.*, Civil Action No. DKC-17-535 (D. Md.), requesting to be transported to an outside hospital and alleging the denial of medical treatment. *See* ECF No. 8. Mr. Robinson complied with a court order to supplement his complaint, and on March 30, 2018, filed a supplement to his complaint naming State Defendants Graham, Weber Butler, Whiteside, Gordon, and Shaver, as well as Medical Defendant Clark, "All Named Medical Staff," and "All Unknown Named DOC Officers."[5] ECF No. 7.

As delineated in the Order instituting this case, Mr. Robinson's allegations about a blocked colon and herniated discs were addressed in *Robinson v. Martin, et al.*, Civil Action No. DKC-17-535 (D. Md.) (Mem. Op. and Order, ECF Nos. 63, 64) with summary judgment entered in favor of the Medical Defendants in that case on February 1, 2018. *See Robinson v. Martin, et al.*, Civil Action No. DKC-18-295, ECF No. 8, p. 2, n.1. Mr. Robinson's orthopedic issues relating to his neck, hip, back, shoulder and arms, raised for the first time in his cross-motion for summary judgment in the older case, are to be addressed in the context of this case, as they were not timely raised in *Robinson v. Martin, et al.*, Civil Action No. DKC-17-535 (D. Md.) (*see* ECF No. 63, p. 14). Thus, only orthopedic ailments relating to Mr. Robinson's neck, hip, back, shoulder and arm pain – and these ailments alone – are addressed here. To reiterate, although Mr. Robinson's complaint provides a chronology of events dating to the early 1990s and his initial arrest and

---

[4] This opinion cites to pagination assigned by the court's electronic docketing system.

[5] Defendants "All Unknown Named DOC Officers" and "All Named Medical Staff," named in the caption of the complaint, were not identified or served with process, and are dismissed without prejudice.

2

detention and details a prior alleged assault by corrections staff at the Maryland Penitentiary in 1995,[6] this case is limited to reviewing his allegations concerning medical treatment for orthopedic issues relating to his neck, hip, back, shoulder and arms which were raised after the conclusion of Civil Action No. DKC-17-535.

In response to the complaint, the Correctional and Medical Defendants have filed motions to dismiss or in the alternative, motions for summary judgment. ECF Nos. 18 and 30. Although advised of his right to respond and oppose the dispositive motions (ECF Nos. 19 and 31), Mr. Robinson has failed to do so in a timely manner.[7] The dispositive motions may be decided without a hearing. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Defendants' dispositive motions, construed as motions for summary judgment, are GRANTED.

## II. The Parties' Allegations and Assertions

### A. Mr. Robinson

Essentially, Mr. Robinson, an "injured and handicap[ped] wheelchair-bound" 68-year-old inmate (ECF No. 1 at 1), alleges in his unverified complaint that he is punished by the State of Maryland, the Department of Public Safety and Correctional Services ("DPSCS"), and Wexford employees due to his prior litigation against them. He claims that on the morning of December 21,

---

[6] Mr. Robinson alleges generally that DPSCS is conspiring with the medical staff to keep him from receiving treatment, operations, and proper care to keep evidence out of the courts regarding the physical attacks alleged to have occurred at the time of his arrest in 1991 by the Howard County Police, and in 1995, by Division of Correction (DOC) correctional officers at the former Maryland Penitentiary. ECF No. 1 at 3, 9. He maintains that he also sustained head injuries during these alleged beatings from being repeatedly kicked in the head. *Id.* These 1991 and 1995 incidents are time-barred and are not under consideration here.

[7] Mr. Robinson was afforded extensions of time to file an opposition response. *See* ECF Nos. 52 at 2; ECF Nos. 19, 24, 26, 29, 31, 35 and 46. His recent opposition submissions (ECF Nos. 56 and 57) were filed well outside the final deadline of February 11, 2019 (*see* Order, ECF No. 52 at 2, ¶ 2), and will not be considered. Likewise, his eleventh-hour motions to appoint counsel (ECF Nos. 53 and 55) will not be considered and are hereby denied, for reasons set forth in previous orders. *See* ECF Nos. 3, 8 and 46.

2017, pharmacy personnel[8] told him his medication was discontinued even though he had a current prescription that was not due to expire until January 15, 2018.[9] *Id*. at 2.

Mr. Robinson attaches several Requests for Administrative Remedy Procedure (ARPs) as exhibits to his complaint. On November 8, 2016, he filed an ARP alleging that the medical department was discriminating against him by failing to provide him proper care and treatment. ECF No. 1-2 at 1.[10] On December 21, 2017, Mr. Robinson submitted an ARP complaining that his pain medication was stopped, effective that date. ECF No. 1-8. He later submitted ARP WCI-3267-17, on December 26, 2017, complaining that his pain medication was abruptly stopped even though the prescription had not expired. ECF No. 1-9.

Mr. Robinson asserts that he filed sick-call requests on December 21, 2017, December 29, 2017, and January 1, 2018, to Defendant Clark "because the pain medication was taken out of the computer by someone." ECF No. 1 at 5; ECF No. 1-12. [11] He opines that the attorneys

---

[8] Pharmacy personnel are not employed by Wexford and are not under the control of the medical staff. ECF No. 18-5, Affidavit of Asresahegn Getachew, M.D., at ¶ 9.

[9] Mr. Robinson contends that he is being punished mainly by Naa E. Oldifie, R.Ph, who is not a named defendant in this case. It appears that Oldifie is a clinical pharmacist and may be a "vendor employee" of DPSCS. ECF No. 1 at 1.

[10] On December 4, 2017, Mr. Robinson filed ARP WCI-3044-17, stating that he was scheduled for sick-call on November 23, 2017, regarding his herniated discs, but the appointment was cancelled and never rescheduled. ECF No. 1-3. As noted above, herniated disc disorders are not at issue here. On December 6, 2017, he filed an ARP requesting a new C-PAP machine and a new gel mattress. ECF No. 1-4. More information was requested, and on December 13, 2017, Mr. Robinson resubmitted the ARP. ECF No. 1-5. These alleged deficiencies are not the focus of this case, as noted above. In any event, it appears Mr. Robinson's concerns about a damaged C-PAP machine and replacement for a torn gel mattress were addressed and resolved in his favor. ECF No. 18-5, Getachew Aff. at ¶¶ 7-8.

[11] Mr. Robinson also filed a sick-call slip stating he did not receive gel insoles that were ordered several times, attaching a letter to the ARP he received from Nurse Swann informing him that the request for gel insoles was denied. ECF No. 1-14. He complains of problems with his feet and legs and attached a copy of medical papers indicating his left leg is two inches shorter than the right and he needs orthopedic lift shoes. He includes a letter from Wexford Health Sources, Inc.'s ("Wexford") corporate office dated August 30, 2017, advising that the request for

4

representing Wexford instruct Wexford employees "not to do anything" for him (ECF No. 1 at 5) and asserts he will die soon because of the "evil treatment" he is receiving at WCI. ECF No. 1 at 6.

In his supplemental complaint, Mr. Robinson states that his walking cane was taken from him on March 9, 2018, and his feed-in status was terminated on March 26, 2018. ECF No. 7.[12]

Mr. Robinson claims that "some unknown named medical workers" and Captain Morgan retaliated against him by having Captain Gordon send an e-mail on March 9, 2018, to Sgt. Shaver, who then ordered Officers Lindberg and Patterson to enter his cell when he was not present and remove his cane. ECF No. 7 at 2. His requests to have his cane returned have been ignored and as a result, he cannot walk, has fallen in his cell, and his legs have become swollen and painful due to inactivity. ECF No. 7 at 2. He claims that he was placed on feed-in status on December 23, 2017, and remained on that status until Monday, March 26, 2018, at 4:45 p.m., at which time officers told him feed-up status had been discontinued and would not allow a feed-up worker to deliver his meal. ECF No. 7 at 3. He claims that his request to speak with a supervisor was ignored, and he missed the meal. *Id*. Mr. Robinson claims that his feed-in status order does not expire until December 23, 2019. *Id.*

---

diabetic shoes was denied (ECF No. 1-13 and 1-14) and includes an x-ray requisition for his feet from August 26, 2009, showing mild degeneration of the metatarsal (MT) joint of his right big toe and bone spurs in both feet. ECF No. 1-16. As previously noted, none of these allegations are at issue here.

[12] Mr. Robinson reiterates that in October of 2017, his five-year-old CPAP machine with humidifier broke, and Dr. Joubert stated that she would order a new one and also order a new gel mattress for him to replace an old one that was leaking, but the items were never ordered. *Id*. He wrote to Warden Graham and to Secretary Moyer for assistance, and the Warden advised him that the Secretary had written to the medical department. On February 28, 2018, Mr. Robinson received a new CPAP, but it did not contain a humidifier. *Id*. When he complained of the problem, he claims medical staff became angry and ignored his sick-call requests. *Id*. Again, these alleged deficiencies of care are not addressed in this case.

5

Mr. Robinson claims that he is being harassed, that "they" are planning to make any excuse to kill him, and that the medical department, the Security Chief, and the Warden will "cover it up." As a result, he fears for his life. ECF No. 7 at 3. He states that he has not done anything to anyone, and claims that he is a victim of racism and discrimination for "no reason" and claims that he is not receiving any medical treatment or proper medical care. ECF No. 7 at 3.[13]

Mr. Robinson seeks injunctive relief, to include a referral to an outside orthopedic surgeon and an MRI to address his orthopedic pain; a TENS unit;[14] replacement of his cane; and placement on feed-in status. ECF No. 1; ECF No. 7 at 6. Essentially, he contends that his suffering has increased because of the Medical and Correctional Defendants' ongoing violation of the Eighth Amendment.

### B. The Medical Defendant

The sole Medical Defendant, Nurse Practitioner Janette Clark, does not dispute that Mr. Robinson is a 68-year-old prisoner with a medical history of allergic rhinitis, hyperlipidemia, hypertension, sleep apnea, obesity, diabetes mellitus, benign prostatic hyperplasia, hearing loss, COPD, asthma, irritable bowel syndrome (IBS), and chronic neck, back and hip pain. He uses a cane, is provided a wheelchair for long distances, and suffers diarrhea, constipation, abdominal pain and incontinence due to IBS. Affidavit of Asresahegn Getachew, M.D., ECF No. 18-5, ¶ 4;

---

[13] Mr. Robinson also alleges that his eyes are weak and he must hold his papers five inches away then must rest his eyes for approximately two hours after typing or reading for 10-15 minutes. ECF No. 7 at 3-4. He claims that his typewriter is currently broken and it no longer has a memory capacity, so he must finish typing or he will lose all the work he started. *Id.* at 4. He claims a Division of Correction Directive ("DCD") states that security cannot tell medical [staff] "who to treat, and who not to treat," and alleges that DOC officers "like Captain Gordon" tell medical staff "like Janette Clark" who provide medical order renewals what to do and not do. ECF No. 7 at 4-5. These allegations are not the subject of the instant lawsuit and will not be addressed here.

[14] A Transcutaneous Electrical Nerve Stimulator ("TENS" unit) is a small battery-operated device that uses low-voltage electric currents to treat pain. *See* https://my.clevelandclinic.org/health/treatments/15840-transcutaneous-electrical-nerve-stimulation-tens (last reviewed March 11, 2019).

*see also* medical records in DKC-17-535, ECF No. 19-4. Ms. Clark argues that record evidence demonstrates that Mr. Robinson has failed to state a constitutional claim under 42 U.S.C. § 1983 because he has received constitutionally adequate medical care under the Eighth Amendment.

Medical personnel do not dispute that Mr. Robinson suffers chronic pain syndrome. ECF No. 18-4 at 5. Mr. Robinson's pain medication was changed in the fall of 2017, when Tramadol[15] was substituted for Tylenol # 3.[16] Mr. Robinson reported during an October 9, 2017 chronic care clinic visit that the new medication provided some relief for his generalized neck and back pain. ECF No. 18-4 at 6.

Relevant here, Mr. Robinson complained of worsening hip, neck, and lower back pain during a scheduled medical visit on October 24, 2017. ECF No. 18-4 at 7. Review of prior x-rays showed mild degenerative disc disease. *Id.* Although unclear from the record, Mr. Robinson had been medically assigned to use a wheelchair with an inmate "pusher" as well as a cane and walker, and to receive his meals in his cell. On December 23, 2017, this medical assignment was renewed. ECF No. 18-4 at 8. Mr. Robinson alleges that Nurse Clark discontinued his pain medication on December 21, 2017, and thereafter ignored his December 29, 2017, and January 1, 2018, sick call complaints of pain. He also alleges that his cane was taken on March 9, 2018, while he was away from his cell, and his feed-in status terminated on March 26, 2018, causing him to miss a meal. These allegations form the impetus for his injunctive relief requests noted above.

Nurse Clark asserts that these allegations are not supported by the uncontroverted medical record, which demonstrates her limited role in Mr. Robinson's treatment regarding his orthopedic complaints and steps taken by other health care providers to address his complaints. Mr. Robinson

---

[15] Tramadol is a narcotic-like pain reliever used to treat moderate to severe pain. *See* https://www.drugs.com/tramadol.html (last viewed August 1, 2018).

[16] A 90-day supply of Tramadol was prescribed on September 15, 2017. ECF No. 18-4 at 10.

was given a 90-day prescription for Tramadol on September 15, 2017. ECF No. 18-4 at 10. On December 21, 2017, the prescription was inexplicably stopped by pharmacy personnel who do not work for Nurse Clark or other Wexford personnel, and none of whom are named in this lawsuit. ECF No. 18-5, Affidavit of Asresahegn Getachew, M.D. at ¶ 9.

Mr. Robinson claims that his sick call requests of December 29, 2017, and January 1, 2018, were ignored. However, on January 5, 2018, Nurse Clark corrected the delivery problem and Mr. Robinson's Tramadol prescription was again provided. ECF No. 18-4 at 9.

Medical records further note that following a January 23, 2018 telemedicine conference concerning an unrelated urology problem, Mr. Robinson's complaint of back pain was addressed. ECF No. 18-4 at 22. A notation in Mr. Robinson's chart states that he was receiving Tramadol twice daily as of January 12, 2018, and that the medication would be continued until April 12, 2018. ECF No. 18-4 at 24. An earlier x-ray of the lumbar spine had revealed grade anterolisthesis[17] of L5 and S1, with no acute abnormality, leading to a diagnosis of mild degenerative disease of the spine. ECF No. 18-4 at 22, 67. Dr. Getachew avers that the January 23 conference related to the need for cardiac clearance to provide Mr. Robinson a prostate biopsy, and that, after cardiac clearance was obtained, medical personnel would schedule an MRI of the back and hip and assess any need for referral to an orthopedist after the MRI was completed. ECF No. 18-5, ¶ 5.

A chart entry dated March 7, 2018, states that DOC custody staff requested a medical review of Mr. Robinson's special needs orders, which included use of a cane, walker, wheelchair with a pusher, and feed-in status. ECF No. 18-4 at 41-42. Upon review, medical orders for Mr.

---

[17] Anterolisthesis (also called spondylolisthesis) is a spine condition in which the upper part in front of each vertebra slips forward onto the vertebra below, causing pain when nerve roots are pinched. *See* https://www.spine-health.com/glossary/anterolisthesis (last reviewed March 8, 2019).

8

Robinson to receive a wheelchair pusher, wheelchair, walker, and a pillow wedge were continued, and orders for a cane, feed-in status, and medical ice were discontinued. *Id.* It is unclear who conducted Mr. Robinson's needs assessment; however, Nurse Clark communicated the findings to Defendant Gordon. ECF No. 30-10, William Gordon Decl. at ¶¶ 5-6. As noted above, Mr. Robinson indicates that the cane was taken by correctional personnel on March 9, 2018, and his feed-in status, deemed unnecessary on March 7, 2018 (ECF No. 30-10 at ¶ 6), was revoked on March 26, 2018, causing him to miss a meal.

During a May 29, 2018, chronic care clinic visit, Mr. Robinson complained of cervical and lumbar disc pain. Dr. Getachew noted that an MRI of the lumber spine and hip would be postponed until Mr. Robinson's cardiac tests were completed. ECF No. 18-4 at 67. Dr. Getachew ordered the renewal of a cane, and Mr. Robinson's Tramadol prescription was continued for 120 days. *Id.*

### C. The Correctional Defendants

The Correctional Defendants assert that they play no role in Mr. Robinson's medical care and that Mr. Robinson has not established that they interfered, hindered, or prevented him from receiving medical care at WCI. ECF No. 30-1 at 15; ECF No. 30-4 at ¶ 2, Declaration of Richard Graham, Jr. Defendants provide exhibits showing they investigated and referred Mr. Robinson's complaints to medical personnel. ECF Nos. 30-5 to 30-9. They also assert that Mr. Robinson provides no substantiation for his claims of retaliation, harassment, and conspiracy which are based solely on conjecture, ECF No. 30-1 at 15-16, and that no DOC directives limit correctional officers from entering his unoccupied cell. ECF No. 30-4 at ¶ 4., Graham Decl. Significantly, Defendant Gordon states under oath that in February 2018, he asked medical personnel if a review of WCI's special needs prisoners could be conducted. ECF No. 30-10, William Gordon Decl. at ¶ 3. The review was conducted in March 2018. *Id.* Gordon played no role in advising medical personnel to remove any assistive items from Mr. Robinson and had no personal involvement in his medical

9

care or treatment, including medical orders for feed-in status, prescribing medication, and ordering medical equipment. *Id.,* ¶ 4. When informed by Defendant Clark that certain special needs items were no longer necessary for Mr. Robinson, Gordon ordered Defendant Shaver to confiscate Mr. Robinson's cane and have it sent to the medical department. *Id.* at ¶ 5. Nothing suggests that Mr. Robinson was "singled out" in the special needs review directed at all WCI special needs prisoners.

The Correctional Defendants also assert that Mr. Robinson's conditions of confinement claim regarding a missed meal after his feed-in status was discontinued is unfounded and insufficient to state an Eighth Amendment claim, ECF No. 30-1 at 16-17, and that any violation of internal policies or procedures does not implicate the due process clause. ECF No. 30-1 at 19. The Correctional Defendants argue that Mr. Robinson's claim against the Warden, Assistant Warden, and supervisory personnel is based on a theory of *respondeat superior* which has no application in claims raised pursuant to 42 U.S.C. § 1983. *Id.* at 20. They concede that Defendant Shaver removed Mr. Robinson's cane by order of his supervisor, Defendant Gordon, but argue that this action alone is insufficient to impose supervisory liability[18] and, in any event, Shaver's actions, taken in response to a medical needs order, do not violate DOC policy.

### III. Standard of Review

In reviewing the adequacy of a complaint under the standard for a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005), citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires

---

[18] As this case is decided on the facts presented by the parties, the court declines to consider the Correctional Defendants' assertion of the qualified immunity defense.

only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that a "plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. *Id.* at 555. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d, 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint').

11

In addition to arguing that they played little or no direct role in Mr. Robinson's care, both the Medical Defendant and the Correctional Defendants provide exhibit evidence suggesting that Mr. Robinson nonetheless has received constitutionally adequate treatment for his various medical conditions and/or was not subjected to unconstitutional conditions of confinement. Given these arguments, the court has considered documents beyond those intrinsic to Mr. Robinson's complaint and therefore considers Defendants' motions as filed both for dismissal and for summary judgment.

A motion for summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

12

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court views the evidence in the light most favorable to the nonmoving party and draw all inferences in his favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). That said, the court must nonetheless fulfill its "affirmative obligation" to "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted), quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002), quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 199)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of

material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary and the "nonmoving party's objections before the district court "served as the functional equivalent of an affidavit." *Id.* at 244-45 (internal citations omitted).

Mr. Robinson has not filed an affidavit under Rule 56(d), nor has he filed timely objections to Defendants' dispositive motions. Further, Defendants have provided Mr. Robinson extensive, updated medical records and other exhibits filed with the court. Thus, the court is satisfied that it is appropriate to address the motion submitted by the Medical and Correctional Defendants as motions for summary judgment.

### IV. Analysis

#### A. Medical Defendant Clark

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003), citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Thus, to state an Eighth Amendment constitutional claim for denial of medical care, Mr. Robinson must demonstrate that Nurse Clark's action or inaction – or the action or inaction of other health care providers -- amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

To satisfy the subjective "deliberate indifference" component, the treatment rendered must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994).

"[S]ociety does not expect that prisoners will have unqualified access to healthcare." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Hudson v. McMillian*, 503 U. S. 1, 9 (1992)). Therefore, to satisfy the objective "serious medical need" component, a prisoner's medical need must be "'life threatening or pose[ ] a risk of needless pain or lingering disability if not treated at once." *Anderson-El v. O'Keefe*, 897 F. Supp. 1093, 1096 (N.D. Ill. 1995) (quoting *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991)). In determining whether a deprivation of

medical care amounts to an Eighth Amendment violation, courts must consider the severity of the medical need, the potential for harm if medical care was denied or delayed, and whether such harm resulted from the treatment, or lack thereof, rendered. *See Burns v. Head Jailor of LaSalle Cty.*, 576 F. Supp. 618, 620 (D. N. Ill. 1984).

Nurse Clark played no role in suspending Mr. Robinson's Tramadol prescription, and immediately renewed it after she met with Mr. Robinson on January 5, 2018. She conveyed information concerning Mr. Robinson's special needs to Defendant Gordon, which (1) removed the need for a cane when a wheelchair, pusher, and walker remained available, and (2) required Mr. Robinson to avail himself of his wheelchair or walker to get to the dining area for his meals. While this may have proven inconvenient to Mr. Robinson, a medical determination that he required some -- but not all – possible equipment options to move about the prison does not rise to a level of deliberate indifference. Mr. Robinson has failed to prove sufficient facts to establish Nurse Clark's liability under § 1983, and she is entitled to summary judgment. Further, the uncontroverted medical record provides no basis for liability as to other medical personnel under the limited facts of this case.

To the extent that Mr. Robinson argues that his pain medication is ineffective, evidence of unsuccessful medical treatment, such as the inability to reduce pain, is insufficient to establish deliberate indifference. *Baez v. Falor*, 2012 U.S. Dist. LEXIS 138574, 103,2012 WL 4356768 (W. D. Pa. 2012), citing *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003); *Rochell v. CMS*, No. 4:05CV268, 2006 U.S. Dist. LEXIS 37943, at 10 (N. D. Miss. April 10, 2006) ("The constitution does not . . . guarantee pain-free medical treatment"). Mr. Robinson has received pain medication adjustments and assessment of his orthopedic problems is ongoing. While it is

16

unfortunate that Mr. Robinson is not pain-free, his condition has not been impacted or prolonged due to unconstitutional misconduct on the part of medical personnel.

### B. The Correctional Defendants

The Correctional Defendants demonstrate that they play no role in the delivery of health care to prisoners. They also demonstrate that Mr. Robinson's ARP grievances regarding his medical treatment were investigated.

Likewise, Mr. Robinson's claim that Defendants Gordon and Shaver violated his privacy and harassed him by removing his cane from his cell fails. The removal was premised on a risk assessment and was approved by medical personnel. In rejecting a prisoner's Fourth Amendment claim to an expectation of privacy in his cell, the Supreme Court stated that denying such a claim did not

> mean that [a prisoner] is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.'

*Hudson,* 486 U.S. at 530-31. An Eighth Amendment violation is not supported on the undisputed facts presented. Mr. Robinson continued to be provided a wheelchair and pusher and the use of the cane was restored after a period of roughly two months.

Similarly, missing one meal as an isolated event did not deprive Mr. Robinson of basic nutritional needs sufficient to cause "serious medical and emotional deterioration attributable to" the challenged conditions, as required by *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (quoting *Shrader v. White,* 761 F.2d 975, 979 (4th Cir. 1985)). Mr. Robinson provides no evidence to show harm, much less facts by which the court could conclude that correctional personnel's deliberate indifference was the cause of his harm. *Id.; see also Islam v. Jackson*, 782 F. Supp. 1111, 1114-15 (E.D. Va. 1992).

Mr. Robinson states that correctional personnel have conspired with medical personnel in retaliation for prior litigation. To prevail on a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). However, a complaint which "alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (*judgment vacated on other grounds*, 525 U.S. 802 (1998) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Md., Inc. v. Wicomico Cty, Md*., 999 F.2d 780, 785 (4th Cir. 1993). Nothing suggests that Mr. Robinson has been deterred from seeking medical treatment, or from filing suit if he deems such treatment inadequate. Further, his retaliation claim is vitiated by undisputed evidence that the actions taken with regard to his medical care and provision of assistive devices were based on legitimate, non-retaliatory rationales.

V.  **Conclusion**

"Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir. 1970). Mr. Robinson's treatment for his orthopedic problems is ongoing and to date has been appropriate and timely. Mr. Robinson's orthopedic conditions, especially those affecting his back, may be

18

degenerative, and his medical needs may change in the future, requiring additional intervention. At present, however, there are no exceptional circumstances sufficient to overcome the Medical Defendant's assessment that Mr. Robinson has received appropriate pain relief for his current medical conditions. The removal of his cane occurred after medical reassessment of his condition, and the cane later was returned. Elimination of feed-in status was medically approved, and Mr. Robinson suffered no injury as a result of one missed meal. Further, Mr. Robinson's assertions of retaliation by Correctional Defendants are refuted by the record evidence.

Accordingly, Defendants' motions to dismiss or, alternatively, for summary judgment, construed as motions for summary judgment, are granted. A separate Order follows.

March 12, 2019 _____/s/_____
DEBORAH K. CHASANOW
United States District Judge